```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 08-104 |
| JEFFERSON DANIELS | SECTION: "R" |

### ORDER AND REASONS

Before the Court is defendant Jefferson Daniels' motion to suppress the firearm allegedly obtained in violation of his Fourth Amendment rights. For the following reasons, the Court DENIES Daniels' motion.

### I.  BACKGROUND

Defendant Jefferson Daniels is indicted in a one count indictment for being a convicted felon in possession of a firearm. According to the Tangipahoa Parish Sheriff's Office Incident Report, as well as the testimony of Deputy Womack during the evidentiary hearing, on March 28, 2008, Deputy Womack was traveling on I-55 when he observed a Pontiac G6 cross the center line two times and run onto the shoulder two times. (*See* R. Doc. 20-3.) Deputy Womack pulled the vehicle over, approached the car, and asked the driver, Jefferson Daniels, for his drivers license and registration. The Deputy noted that Daniels' hand was shaking, and throughout their conversation that Daniels' voice

was quivering and that he seemed more nervous than would be expected for that situation.  Daniels informed the Deputy that the car was a rental and gave him the rental agreement.  The Deputy testified that Daniels' hand was shaking when he handed him the rental agreement.  There was a passenger in the front seat, Cynthia Brown and another passenger in the back seat, Brandy Burkey.  The rental agreement was issued to a Rena Parker and indicated that the vehicle had been due back on March 17, 2008, eleven days earlier.  Daniels told the detective that he did not know anyone named Rena Parker, and that his step-father rented the vehicle.  The Deputy asked Daniels, Brown, and Burkey if they had any prior arrests.  All three replied that they had no prior arrests.

   Deputy Womack returned to his unit to write out a citation to Daniels for violating La. R.S. 32:79, improper lane use.  He attempted to contact the rental company, but it was closed at that hour of the morning.  He then ran a criminal history check on Daniels, Brown and Burkey.  The criminal history check on Daniels showed that he had a history of felony narcotics trafficking, arrests and convictions, as well as felony firearms violations.  Deputy Womack called Daniels back towards his vehicle and asked him about his criminal history.  Daniels admitted he had four felony convictions.  The Deputy then had Daniels sign the citation.  Deputy Womack handed Daniels his

drivers license, a copy of the citation, and an envelope with instructions on how to mail the fine. Daniels then turned to walk back towards his vehicle. The Deputy testified that after Daniels had taken about three steps, and was half-way between the police unit and the rental car, Deputy Womack said, "Excuse me, Mr. Daniels," and asked him if he had anything illegal inside the vehicle. Daniels said he did not. Womack asked him if he had any firearms, knives, cocaine, marijuana, methamphetamine, or other illegal narcotics. Daniels responded no. Finally, Womack asked Daniels if he had any large amounts of currency. Daniels replied that he had about $2000.00 in the center console.

Deputy Womack then asked Daniels if he could search the vehicle. Daniels replied yes and signed a Tangipahoa Parish Sheriff's Office Voluntary Consent to Search Form. (*See* R. Doc. 20-6.) Deputy Womack testified that he told Daniels that if he chose to stop the search at any point, the search would be concluded. He also testified that Daniels did not ask him any questions about the form before signing it. Daniels signed the form around 6:56 a.m., about ten minutes after the Deputy had pulled him over. (*See id.; see also* R. Doc. 20-3.) After the Deputy had started searching the vehicle, Sergeant Lane arrived on the scene. As Deputy Womack was searching the vehicle, he found a loaded Ruger P95, 9mm, semi-automatic handgun inside the side pocket of a black duffle bag inside the trunk. Deputy

Womack asked Daniels and the two passengers who owned the black duffle bag. Daniels told the Deputy that the duffle bag was his. Deputy Womack then arrested Daniels for being a convicted felon in possession of a firearm.

Defendant moves to suppress the Ruger P95 9mm firearm the police officer recovered from the trunk of the vehicle. Daniels contends that he was illegally detained after the traffic stop was concluded, and that his subsequent consent to search was therefore not voluntary.

## II. DISCUSSION

As the proponent of a motion to suppress, defendant has the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights. *United States v. Kelly*, 981 F.2d 1464, 1467 (5th Cir. 1993); *see also Nardone v. U.S.*, 308 U.S. 338, 341 (1939).

Defendant does not dispute that the initial traffic stop was justified. Deputy Womack observed Daniels commit a violation of Louisiana's traffic code, initiated a stop, and issued defendant a citation. (*See* R. Doc. 20-5.) Defendant contends, however, that Deputy Womack illegally prolonged Daniels' detention and that Daniels' consent to search was invalid because his signing of the consent to search form was not a voluntary act of free

4

will.  Before the Court addresses either contention, it first addresses the Government's challenge that the defendant does not have standing to challenge the search and seizure.

*1.  Standing*

The Government contends that the defendant has not alleged facts that show that he has standing to suppress the gun found inside the trunk of the Pontiac G6.  To establish whether a defendant has standing to bring a Fourth Amendment challenge to an allegedly illegal search, a court must consider whether (1) the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized; and (2) whether that expectation of privacy is one which society would recognize as reasonable. *See United States v. Riazco*, 91 F.3d 752, 754 (5th Cir. 1996); *United States v. Kye Soo Lee*, 898 F.2d 1034, 1037-38 (5th Cir. 1990) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)).

When a person moves to suppress evidence found in a vehicle, she or he must establish a property or possessory interest in the vehicle.  The Fifth Circuit has held that when a person has borrowed an automobile from another, with the other's consent, the borrower becomes a lawful possessor of the vehicle and thus has standing to challenge its search. *Kye Soo Lee*, 898 F.2d at 1038 (citing *United States v. Martinez*, 808 F.2d 1050, 1056 (5th Cir. 1987)).  Therefore in *Kye Soo Lee*, the Fifth Circuit held

5

that two persons operating a rental truck, with the renter's permission, had standing to contest a search of the truck's cargo hold.

On the other hand, in *Riazco*, the Fifth Circuit held that when the driver of a vehicle did not own the vehicle and had not rented it, and the rental agreement specifically stated that the car was to be driven only by persons authorized by the car rental company, the driver did not assert a property or possessory interest in the vehicle. *Riazco*, 91 F.3d at 754. The Court noted that "[t]ypically, a passenger without a possessory interest in an automobile lacks standing to complain of its search because his privacy expectation is not infringed." *Id.* (quoting *United States v. Roberson*, 6 F.3d 1088, 1091 (5th Cir. 1993)).

Here, the only evidence before the Court is that the rental agreement was for a Rena Parker, a person that neither Daniels nor his passengers knew. As in *Riazco*, the rental car agreement had expired before the traffic stop, and further provided that the car was to be driven only by persons authorized by the car rental company. (*See* Budget Rental Agreement, R. Doc. 20-4.) Daniels contends that the rental agreement in the vehicle was an old rental agreement. Therefore at the evidentiary hearing, Daniels introduced a fax with part of a rental agreement attached to it. The fax is not a sworn affidavit but is an unverified document signed by a Robert Bell and provides as follows: "This

6

Fax is in regards to Jeff Daniels and the car I Robert Bell rented. If you have any questions please feel free to contact me." The attached portion of a rental car agreement reflects that the car that was rented was due back on April 1, 2008.

Although it is certainly plausible that the rental agreement in the car was an old agreement, there is no evidence before the Court that Robert Bell is the step-father of Daniels, that he gave Daniels permission to use the car, or that the rental agreement authorized others to drive the car. Based on the evidence before the Court, the Court finds that Daniels has failed to establish that he had a legitimate expectation of privacy with respect to a search of the vehicle. *See also United States v. Muhammad*, 58 F.3d 353 (5th Cir. 1995) (holding that defendant had not introduced any evidence that he had permission to drive rental car, and thus lacked standing to challenge search). Furthermore, such evidence could have easily been furnished if it existed. Accordingly, the Court finds that the defendant lacks standing to challenge the seizure of the firearm found in a search of the rental vehicle.

  2. *Alternative Ruling*

    A. *Detention*

The Court also finds that even if Daniels had standing to challenge the search, he would not prevail on the merits of his motion. The Fourth Amendment protects against unreasonable

searches and seizures. To challenge the constitutionality of the alleged detention, therefore, defendant must establish that there was an actual seizure after the traffic stop ended, so as to trigger an analysis of his Fourth Amendment Rights.

Stopping a vehicle and detaining its occupants is a seizure within the meaning of the Fourth Amendment. *United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000). When an officer has a reasonable and articulable suspicion that a person has committed or is about to commit a crime, limited searches and seizures are permissible under the Fourth Amendment despite a lack of probable cause. *Id; see also Terry v. Ohio*, 392 U.S. 1 (1968). To determine whether a seizure has exceeded the scope of a permissible *Terry* stop, courts consider (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances justifying the stop in the first place. *Jones*, 234 F.3d at 240.

Here, defendant does not challenge the initial traffic stop. Moreover, because the stop was valid, the officer had the right to request the defendant's license and the registration or rental papers for the car, and to run a computer check on those documents. *Id.* A detention may last no longer than required to effect the purpose of the stop, however. *United States v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006).

> [A] Fourth Amendment violation occurs when the detention extends beyond the valid reason for the stop. Once a

>  computer check is completed and the officer either issues a citation or determines that no citation should be issued, the detention should end and the driver should be free to leave.  In order to continue a detention after such a point, the officer must have a reasonable suspicion supported by articulable facts that a crime has been or is being committed.

*United States v. Sanchez-Pena*, 336 F.3d 431, 440 (5th Cir. 2003) (quoting *United States v. Santiago*, 310 F.3d 336, 341-42 (5th Cir. 2002)).  Defendant contends that the Deputy's continued detention after the completion of the traffic stop was unreasonable and exceeded the scope of the initial stop.

The Government contends, however, that there was no illegal seizure because defendant was no longer detained at this point; the traffic stop was over and Deputy Womack had handed Daniels his citation and returned his driver's licence.  The facts of this case are analogous to those in *Ohio v. Robinette*, 519 U.S. 33 (1996) (rejecting bright line rule that seized defendant be advised that he is "free to go" before his consent to search will be recognized as voluntary).  In *Robinette*, a police officer stopped the defendant for speeding.  After the officer ran a computer check on the defendant's license, handed the license back to him, and issued a verbal warning regarding the traffic violation, the officer asked the defendant "One question before you get gone: [A]re you carrying any illegal contraband in your car?  Any weapons of any kind, drugs, anything like that?" *Id.* at 35-36.  The defendant said no, but consented to allowing the

9

officer to search the vehicle.  The search uncovered a small amount of marijuana and MDMA.  The Ohio Supreme Court held that the search resulted from an unlawful detention and further that "Any attempt at consensual interrogation must be preceded by the phrase 'At this time you legally are free to go' or by words of similar import." *Id.* at 36 (citing 73 Ohio St.3d 650, 650-651 (1995)).  The Supreme Court reversed, holding that "it would be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary." *Id.* at 40.  Rather, "the proper inquiry necessitates a consideration of all the circumstances surrounding the encounter." *Id.* at 39.  Following *Robinette*, the Fifth Circuit has recognized that a "consensual interrogation" may follow the end of a valid traffic stop. *See Sanchez-Pena*, 336 F.3d at 442-43 (citing cases).  A number of other Circuits have also held that after an officer returns an individual's license and registration, and issues a warning or gives the individual a citation, the initial traffic stop is over, and "the encounter becomes nothing more than a consensual encounter." *See id.* (citing *United States v. White*, 81 F.3d 775, 778 (8th Cir. 1996)).

In *Sanchez-Pena*, an officer pulled Sanchez over after observing him weaving and driving slowly.  After running the vehicle's registration and checking for outstanding warrants, the

officer advised Sanchez that he wished to conduct a canine inspection and asked Sanchez if he would mind proceeding with him to a closed checkpoint about thirty miles north of where they were located.  Sanchez consented.  Eventually officers found marijuana concealed inside the gas tank.  On appeal, Sanchez contended that the officer's request that he drive to the checkpoint unlawfully extended the initial traffic stop.  The district court found after a suppression hearing that there was a consensual encounter.  The Fifth Circuit affirmed, finding that the evidence supported the conclusion that the defendants' assent to the canine inspection came in a consensual encounter.  It noted that the officer did not ask Sanchez if he would drive to the checkpoint until he had returned all of his documentation

The test to determine when a situation has turned from a detention into a consensual encounter is "when a reasonable person in the defendant's position would feel free to leave.'" *Id.* (quoting *United States v. Dewitt*, 946 F.2d 1497, 150-102 (10th Cir. 1991)).  "If the driver does receive the license, registration, and any other material back that he needs to be on his way, 'a driver is illegally detained only if the driver has an objective reason to believe that he was not free to end his conversation with the law enforcement official and leave." *Id.* at 443 (quoting *United States v. Turner*, 928 F.2d 956, 958 (10th Cir. 1991)).  Unlike in *United States v. Dortch*, 199 F.3d 193

11

(5th Cir. 1999), when the defendant did not feel free to leave because the officers still held his license and rental papers and had told him they were going to detain his car, and *Jones, supra*, when the officer returned the defendant's rental car agreement but not his driver's license and not the warning citation, here the Deputy had returned to Daniels everything he needed to be able to leave.  Therefore there is no evidence that Daniels was still being detained.  Accordingly, the Court concludes that at the point when Deputy Womack asked Daniels if he could search the car, a reasonable person would not believe that he or she was still being detained.

>    B.    *Consent to Search*

To determine whether consent was validly given, courts consider (1) whether consent was voluntary; and (2) whether it was an independent act of free will. *Jenson*, 462 F.3d at 406. The Fifth Circuit uses a multi-factor test to determine whether consent was voluntary, including: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence ; and (6) the defendant's belief that no incriminating evidence will be found. *Id.* (citing *United States v. Jones*, 234 F.3d 234, 242 (5th Cir. 2000)).  A court looks only

to whether consent was an independent act of free will if the consent follows a Fourth Amendment violation.  The government bears the burden of proving that consent was voluntary. *Jones*, 234 F.3d at 242.

Defendant contends that his signing of the consent to search form was not a voluntary act of free will, because nothing intervened between the illegal detention and the purported consent.  As established above, the defendant was not in custody at the time Deputy Womack asked him for permission to search the vehicle.  Unlike in *United States v. Chavez-Villareal*, 3 F.3d 124 (5th Cir. 1993), Deputy Womack had returned Daniels' licence and registration.  In *Chavez-Villareal*, the officer held the alien registration cards of the driver and passenger of a vehicle when he asked for permission to search the vehicle.  The Fifth Circuit found that this significantly impaired the driver's ability to decline the request. *Id*. at 128.  Here, there is no evidence that Daniels' consent was not voluntary.  There is also no evidence that Daniels was threatened, or that the Deputy forced him to sign the consent to search form.  Although the Deputy was in uniform and next to a marked police unit, there are no facts to indicate the presence of "coercive police procedures."  The defendant was aware of his right to refuse to consent to the search as the Voluntary Consent to Search form that the defendant signed provides "I fully understand that I have the right to

refuse the search of my vehicle / residence." (R. Doc. 20-6.) Finally, the Court notes that based on defendant's age and prior criminal history and interactions with law enforcement, Daniels was intelligent and familiar with the judicial system. Accordingly, the Court finds that the government has met its burden of showing that Daniels' consent was voluntary.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion to suppress.

New Orleans, Louisiana, this __19th__ day of August, 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT COURT