UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO: 08-104

JEFFERSON DANIELS                           SECTION: "R"


**<u>ORDER AND REASONS</u>**

Before the Court is defendant Jefferson Daniels' motion in limine to exclude certain testimony about currency found in Daniels' vehicle and an alert by a police dog trained to detect drugs (R. Doc. 25). Also before the Court is the defendant's addendum to the motion in limine to redact portions of a phone conversation between the arresting officer and the police dispatcher (R. Doc. 38). For the following reasons, the Court GRANTS the motion.

I.  **BACKGROUND**

Defendant Jefferson Daniels is charged in a one count indictment with possessing a firearm after having been convicted of a felony offense. On March 28, 2008, Tangipahoa Parish Sheriff's Deputy Keith Womack observed a Pontiac G6 traveling on I-55 cross the center line two times and run onto the shoulder two times. (*See* R. Doc. 20-2.) Deputy Womack pulled the vehicle

over, approached the car, and asked the driver, Jefferson Daniels, for his drivers license and registration. There was a passenger in the front seat, Cynthia Brown and another passenger in the back seat, Brandy Burkey. The Deputy asked Daniels, Brown, and Burkey if they had any prior arrests. All three replied that they had no prior arrests.

Deputy Womack returned to his unit to write out a citation to Daniels for violating La. R.S. 32:79, improper lane use. He then placed a telephone call to the police dispatcher, asking her to run a criminal history check on Daniels, Brown, and Burkey. The dispatcher noted that Daniels had a criminal history, including several felony cocaine trafficking convictions. Deputy Womack called Daniels back towards his vehicle and asked him about his criminal history. Daniels admitted he had four felony convictions. The Deputy then had Daniels sign the citation and returned the drivers license, a copy of the citation, and an envelope with instructions on how to mail the fine.

Before leaving, Deputy Womack asked Daniels whether he was in possession of any illegal narcotics, weapons, or large amounts of currency, which Daniels denied. Deputy Womack then obtained Daniels' consent to search the vehicle. According to the police report, Womack found a loaded Ruger P95, 9mm, semi-automatic handgun in the side pocket of a black duffle bag inside the trunk. (*See* R. Doc. 20-2.) Deputy Womack asked Daniels and the

two passengers who owned the black duffle bag. Daniels told the Deputy that the duffle bag was his, and Deputy Womack then arrested Daniels for possessing a firearm after having been convicted of a felony offense. (*See id.*)

Womack then continued the search and discovered a large amount of U.S. currency in a brown cloth bag inside the same pocket that had contained the handgun. When Deputy Womack questioned Daniels about the currency, Daniels stated that it was his and that he had won it at a casino. Daniels estimated that he had about $18,000 in his possession, including the currency in the bag and another amount in the center console of the vehicle. (*See id.*) Deputy Womack also discovered a total of one ounce of marijuana in a backpack belonging to Ms. Brown and on Ms. Brown's person. (*Id.*)

Shortly thereafter, DEA Special Agent Karl Newman arrived on the scene, seized the currency, and brought it to the Hammond sub-station of the Tangipahoa Parish Sheriff's Office. At the sub-station, Sheriff's Deputy Henry Neihaus allowed a drug alert dog to enter an open area containing the currency. Deputy Neihaus later reported to Special Agent Newman that the dog had given a positive alert for the presence of illegal narcotics residue.

On April 10, 2008, Daniels was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1)

and 924(a)(2). (*See* R. Doc. 7.) The indictment identified two previous felony convictions, one for aggravated narcotics trafficking and one for cocaine trafficking. (*Id.*) In the meantime, pursuant to *Old Chief v. United States*, 519 U.S. 172 (1997), the government accepted the defendant's offer to stipulate at trial that he has a previous felony conviction, that the weapon at issue is a "firearm," and that the weapon at issue was in or affecting commerce. *See* discussion, *infra*.

Daniels seeks to preclude the government from eliciting testimony regarding the currency and the drug dog's alert. (*See* R. Doc. 25.) He has also filed an addendum seeking to have the government redact portions of Deputy Womack's call to police dispatch concerning Daniels' criminal history. (*See* R. Doc. 38.) Daniels contends that the introduction of this evidence is impermissible under Federal Rules of Evidence 404(b). The government has not opposed the portion of the motion contained in the addendum, nor has it filed any notice of intent to introduce evidence of Daniels' other crimes, wrongs, or acts. *See* FED. R. EVID. 404(b).

**II. DISCUSSION**

A. LEGAL STANDARD

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

FED. R. EVID. 404(b). As the Fifth Circuit has interpreted this rule, the phrase "other crimes, wrongs, or acts" includes only those acts that are "extrinsic" to the crimes charged in the indictment. *See United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979). Evidence of "intrinsic" acts, by contrast, "does not implicate Rule 404(b), and 'consideration of its admissibility pursuant to Rule 404(b) is unnecessary.'" *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996). The Fifth Circuit has elaborated:

> "Other act" evidence is "intrinsic" when the evidence of the other act and evidence of the crime charged are "inextricably intertwined" or both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged.

*United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). Before deciding whether Rule 404(b) bars the admission of certain evidence, a court must thus make a threshold inquiry into the relationship between the evidence and the crime charged in the indictment. As noted, if the evidence is intrinsic to the charge, no rule 404(b) inquiry is necessary.

If the Court determines that the challenged evidence is extrinsic to the charged crime, it must apply Rule 404(b) using the two-part test developed in *United States v. Beechum*, 582 F.2d

-5-

898, 909-18 (5th Cir. 1978) (en banc). *See United States v. Sumlin*, 489 F.3d 683, 690 (5th Cir. 2007). First, the Court must determine whether the evidence is "relevant to an issue other than the defendant's character." *Beechum*, 582 F.2d at 911. As part of this prong, the Court must determine whether there is sufficient evidence to show that the "other act" "was in fact committed and the defendant in fact committed it." *Id.* at 912. The standard of proof is the same as for Rule 104(b): "the preliminary fact can be decided by the judge against the proponent only where the jury could not reasonably find the preliminary fact to exist." *Beechum*, 582 F.2d at 913; *see also United States v. Zabaneh*, 837 F.2d 1249, 1263 (5th Cir. 1988). If there is sufficient evidence of the other act, the next inquiry is whether the evidence is relevant to an issue other than the defendant's character, such as proof of motive, intent, or knowledge. *See* FED. R. EVID. 404(b). Finally, if the court determines that the evidence is relevant to an issue other than character, the court must determine that the evidence "possess[es] probative value that is not substantially outweighed by its undue prejudice and . . . meet[s] the other requirements of rule 403." *Beechum*, 582 F.2d at 911.

    B. CURRENCY AND DOG ALERT

    Daniels first seeks to exclude evidence relating to the currency found in his vehicle and the subsequent drug dog alert

on that currency.

### 1. CLASSIFICATION: EXTRINSIC OR INTRINSIC?

The first inquiry is whether evidence relating to the currency and the dog alert is extrinsic or intrinsic to the charged offense. Although the threshold intrinsic/extrinsic inquiry is necessarily fact-dependent, several Fifth Circuit decisions have held, in contexts similar to this one, that contemporaneously discovered evidence of drug activity was not intrinsic to a firearms charge. In *United States v. Sumlin*, 489 F.3d 683 (5th Cir. 2007), for example, a unanimous three-judge panel ruled that evidence of the defendant's suspected drug-related activities[1] was extrinsic to a charged violation of 18 U.S.C. § 922(g)(1). Despite the physical and temporal proximity of the drug-related evidence to the firearms-related evidence, the court found that they were not part of the same "criminal episode." As the court explained, "[t]he only criminal episode proven in Sumlin's case is possession of a firearm by a felon; the rest is conjecture and irrelevant." *Sumlin*, 489 F.3d at 690.

Similarly, in *United States v. Ridlehuber*, 11 F.3d 516 (5th Cir. 1993), the court found that evidence of drug manufacturing

---

[1] The police officer in that case testified that at the time of the arrest he had observed several things indicating that the defendant was involved in drug transportation, including loose or worn screws on the body of the defendant's car and what appeared to be a marijuana cigarette. *See Sumlin* 489 F.3d at 685-86; *see also id.* at 686 (relating the officer's testimony that a drug dog later alerted on the defendant's vehicle).

discovered in the defendant's home was extrinsic to a charge of possessing an unregistered short-barreled shotgun that had been discovered in the same search. Though the court noted that short-barreled shotguns are "commonly found in illegal drug labs," *id.* at 522, it recognized that this does not necessarily mean that drug activity is intrinsic to the very specific crime of possessing an unregistered firearm. If anything, the court reasoned, the converse may be true: firearms possession may be intrinsic to the crime of drug manufacturing. *See id.* at 522. The difference is that whereas firearms may be a "tool of the trade" of drug manufacturers, drugs are not a "tool of the trade" of felons possessing firearms.

Here, as in *Sumlin*, the indictment charges Daniels with one count of knowingly possessing a firearm in violation of 18 U.S.C. § 922(g)(1). It does not charge him with transporting drugs, nor does the government "allege[] . . . that [Daniels] had any intent to manufacture, distribute, or dispense any controlled substance, as required by drug transportation statutes." *Sumlin*, 489 F.3d at 690. The "criminal episode" in question is thus the possession of a firearm, not the drug crimes. *See Ridlehuber*, 11 F.3d at 522 ("The only 'criminal episode' proven here was possession of a short-barreled shotgun. The rest is conjecture."). As in *Sumlin* and *Ridlehuber*, the currency and dog alert evidence are not "inextricably intertwined" with the

firearms charge, nor are the drug-related and firearms-related activities part of the relevant "criminal episode." Indeed, the government "has made no effort in its indictment or other pleadings to charge that the [drug] offenses are part of the same criminal episode [as], or that they are otherwise intertwined" with, the charged crime.[2] *United States v. Impastato*, 535 F. Supp. 2d 732, 735 (E.D. La. 2008).

Moreover, the challenged evidence does not "complete the story of the crime." *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996). As noted, the discovery of the currency and the dog alert both took place after the firearm was discovered and Daniels was arrested. (*See* R. Doc. 20-2.) If the government is forbidden from introducing the challenged testimony, it will still be able to tell the complete story of the events surrounding Daniels' arrest, from the initial stop to the discovery of the firearm. For these reasons, evidence relating to the currency and dog alert is not intrinsic to the crime of possessing a firearm after having been convicted of a felony.

---

[2] It is worth noting that the cases the government cites in support of its position involve conspiracies to possess and distribute illegal drugs. *See United States v. Navarro*, 169 F.3d 228 (5th Cir. 1999); *United States v. Royal*, 972 F.2d 643 (5th Cir. 1992). For drug conspiracy charges, which are generally quite broad, evidence of other contemporaneous drug activity is often considered part of a "single criminal episode" or "inextricably intertwined" with the conspiracy. *Williams*, 900 F.2d at 825. Possession of firearm charges, on the other hand, are far narrower.

2. ADMISSIBILITY

Having determined that the evidence in question falls within the scope of Rule 404(b), the Court must next apply the two-part *Beechum* test. With respect to the first prong of the test—the relevance of the challenged evidence to an issue other than the defendant's character—the Court finds that the evidence is irrelevant because it is insufficient for a jury to reasonably conclude that Daniels engaged in the alleged "other crimes, wrongs, or acts." In its brief, the government argues that "it is clear that a drug offense"—later identified as "drug trafficking" (*see* R. Doc. 30 at 9)—"had [occurred] or was going to occur." (R. Doc. 30 at 8.) The Court rejects this argument.

To begin with, the possession of a large amount of currency is not itself a crime, nor does it necessarily indicate drug-related activity. Though people involved in the drug trade may tend to carry large amounts of currency, many people with no connection to the drug trade also carry large amounts of currency. *See United States v. $191,910.00 in United States Currency*, 16 F.3d 1051, 1072 (9th Cir. 1994) ("Fifteen to twenty thousand dollars is hardly enough cash, standing alone, to justify more than a suspicion of illegal activity."); *see also id.* at 1071-72 (forfeiture claimant who was carrying fifteen to twenty thousand dollars "could just as easily have been a distributor of 'street money' in a political campaign, an

embezzler, a jewel smuggler, an art thief, or an S & L crook as a drug conspirator").

The drug dog alert provides little more proof of Daniels' alleged "drug trafficking." The government has not supplemented the alert with the results of a laboratory test, nor has it supplied any information relating to the accuracy of dog alerts generally. Indeed, the record does not even indicate what type of drugs are alleged to have been on the currency. Moreover, it is not clear what portion of money currently in circulation contains narcotics residue. *See, e.g.*, *United States v. $80,760 in U.S. Currency*, 781 F. Supp. 462, 475-76 (N.D. Tex. 1991) ("There is some indication that residue from narcotics contaminates as much as 96% of the currency currently in circulation."), *aff'd*, 978 F.2d 709 (5th Cir. 1992) (unpublished table decision). Finally, as Daniels points out, Deputy Womack himself may have contaminated the currency, as it appears that he handled both the currency and Ms. Brown's marijuana before the canine team arrived, and the marijuana in her backpack was not linked to the defendant. (*See* R. Doc. 20-2.)

In light of the weakness of this circumstantial evidence, no jury could reasonably find that "a drug offense had [occurred] or was going to occur" (R. Doc. 30 at 8).[3] *Cf. Sumlin*, 489 F.3d at

---

[3] The government cites *United States v. Simon*, 767 F.2d 524 (8th Cir. 1985), to support its argument that the currency and dog alert are relevant. Unlike here, however, the evidence of

685, 691 (finding that testimony regarding car body modifications often employed by drug traffickers and a partially-smoked marijuana cigarette was insufficient to support finding of relevancy under 404(b)); *see also United States v. United States Currency, $30,060.00*, 39 F.3d 1039, 1044 (9th Cir. 1994) (finding that "there is no credible evidence connecting [the defendant's] money to drugs," where the defendant was found with $30,060 in cash in a plastic bag).

Even if the proffered evidence had some relevance, its probative value is substantially outweighed by its unduly prejudicial effects. To the extent that the evidence of drug trafficking is relevant to Daniels' motive, intent, or knowledge, its incremental probative value is likely to be slight. As the parties concede, the only issue in this case is whether Daniels knowingly possessed the firearm in question. Yet there is already substantial evidence indicating that Daniels knowingly possessed the gun, including his own admission that the bag containing the gun was his. (*See* R. Doc. 20-2.) The "incremental probity" of the evidence, *Beechum*, 582 F.2d at 914;

---

other crimes was quite strong in *Simon*. *See Simon*, 767 F.2d at 525-26 (noting that the police found "an electronic gram scale"; "a razor blade with a white powdery substance on it"; "[t]hree unloaded rifles"; "many one-gram vials, some of which contained white powder"; "two loaded pistols"; "a mirror with white powder and traces of razor lines on it, a sifter device containing white powder, a gun-cleaning kit, and another small scale" during their search of the premises occupied by the defendant).

*United States v. Jones*, 484 F.3d 783, 786 (5th Cir. 2007), is thus small because it adds little to the government's case on the knowledge issue.

In addition, the unduly prejudicial effect of introducing the challenged evidence would be great. Drug trafficking "is the kind of offense for which the jury may feel the defendant should be punished regardless of whether he is guilty of the charged offense." *Ridlehuber*, 11 F.3d at 516. Indeed, in the words of the *Beechum* court, "[t]his danger is particularly great where, as here, the extrinsic activity was not the subject of a conviction." *Beechum*, 582 F.2d at 914. Because the unduly prejudicial effect of introduction of the currency and dog alert evidence is likely to be great, and the probative value only marginal, the evidence must be excluded. *Cf. Ridlehuber*, 11 F.3d at 523-24.

B. POLICE DISPATCH CALL

Daniels also contends that the introduction of a tape recording of Deputy Womack's phone conversation with a police dispatcher would violate Rule 404(b) because portions of the conversation cover Daniels' criminal history. The government has not opposed this portion of the motion. Indeed, it has accepted the defendant's offer to stipulate that he has previously been convicted of a felony, pursuant to *Old Chief v. United States*, 519 U.S. 172 (1997).

In *Old Chief*, the Supreme Court held that it was an abuse of discretion for the trial court to admit evidence of the defendant's past felonies to prove the prior-conviction element of 18 U.S.C. § 922(g)(1), when the defendant offered to stipulate that he was a convicted felon. *Old Chief*, 519 U.S. at 191-92. The Court recognized that the risk of undue prejudice "will be substantial whenever the official record offered by the Government would be arresting enough to lure a juror into a sequence of bad character reasoning," especially when the prior conviction was for "a gun crime or one similar to other charges in a pending case." *Id.* at 185.

In this case, the government has accepted defendant's *Old Chief* stipulation and so may not introduce evidence of Daniels' prior convictions to prove his status as a convicted felon. In addition, the government has not argued that evidence of the convictions referred to on the dispatcher tape is admissible for some other purpose recognized under Rule 404(b). For these reasons, the Court grants the defendant's motion in limine.

**III. CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's motion in limine, including the addendum, as to all of the challenged evidence. The government shall not elicit testimony relating to the currency and the dog alert. Furthermore, if the

government seeks to introduce any part of the police dispatch call, either in written or tape recorded form, it shall first redact all portions referring to Daniels' criminal history.

New Orleans, Louisiana, this 25th day of August, 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT COURT