UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                     CRIMINAL ACTION

VERSUS                                       NO: 08-104

JEFFERSON DANIELS                            SECTION: R

<u>**ORDER AND REASONS**</u>

Before the Court is petitioner Jefferson Daniels' motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  For the following reasons, the Court DENIES the motion.


**I.    BACKGROUND**

On March 28, 2008, Tangipahoa Parish Sheriff's Office ("TPSO") Deputy Womack stopped Jefferson Daniels for a traffic violation on Interstate 55.[1]  At the time of the stop, Womack noticed that Daniels was very nervous: his hands shook and his voice quivered.[2]  When Womack asked Daniels if he had any prior arrests, convictions or citations, Daniels responded that he had none.[3]  Yet when Womack returned to his vehicle to write the citation and to run the criminal histories of the occupants of

---

[1]   R. Doc. 79 at 2.

[2]   *Id.* at 2-3.

[3]   *Id.* at 3

the vehicle, he discovered that Daniels was a convicted felon.[4] Womack wrote Daniels a citation for the traffic violation.  As Daniels returned to his vehicle, Womack asked if he had anything illegal in his car: any weapons, drugs or large amounts of money.[5]  Daniels told Womack that he had about $2,000 in his car but that he had nothing illegal.[6]

Womack concluded that Daniels' extreme nervousness and his lie about not having prior felonies were suspicious.  Thus, Womack asked for Daniels' written consent to search the vehicle which Daniels gave.[7]  During the search, Womack discovered a black duffel bag inside the trunk.  When he unzipped the duffel bag's side pocket, Womack found a Ruger P94 9mm semi-automatic handgun.[8]  Womack asked the occupants of the car who owned the duffel bag.  When Daniels acknowledged that the duffel bag was his, Womack arrested Daniels for being a felon in possession of a firearm.[9]  After arresting Daniels, Womack continued to search the duffel bag and found $15,000.  Womack also discovered

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

2

marijuana on Cynthia Brown, one of the passengers in the car.[10]

On April 10, 2008, petitioner was indicted for being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[11]  On July 17, 2008, Daniels filed a motion to suppress the firearm recovered from his duffel bag in the car.  Daniels argued that he was illegally detained after the traffic stop had concluded and that his subsequent consent to search was not voluntary.[12]  After holding a hearing at which only Deputy Womack testified, the Court denied the motion to suppress.  The Court found that Daniels lacked standing to challenge the seizure of the firearm found in a search of the rental vehicle.[13]  As an alternative ruling, the Court held that Daniels was not illegally detained after the traffic stop, and the government had met its burden of showing that Daniels' consent was voluntary.[14]

At trial, the government presented the testimony of Agent Jennifer Doreck, Deputy Womack, Agent Karl Newman and Agent Chad Scott.  Doreck identified the firearm she received from DEA in

---

[10]  *Id.*

[11]  R. Doc. 7.

[12]  R. Doc. 15-1 at 1.

[13]  R. Doc. 33 at 7.

[14]  *Id.* at 12, 14.

April 2008 in connection with Daniels' case.[15]  Deputy Womack testified to the facts surrounding the traffic stop and subsequent search of the vehicle.  Specifically, Womack testified that Daniels signed the traffic ticket at the scene, and that he returned to Daniels a copy of the ticket, an envelope to mail the fine, and his driver's license.[16]  In addition, Womack testified that Daniels admitted that the duffel bag belonged to him.[17]  The government also offered as evidence the firearm, the traffic citation issued to Daniels, a car rental agreement found in the car Daniels was driving in the name of Rena Parker, the consent to search form signed by Daniels, and several photographs depicting the contents of the car, including the duffel bag and firearm.[18]

Agent Newman testified that during questioning, Cynthia Brown stated that it was Daniels' idea to bring the gun, and that Daniels had packed the gun in his bag.[19]  Similarly, Agent Scott testified that Cynthia Brown gave a statement that Daniels packed the gun in the duffel bag.[20]  The government also offered as

---

[15]   R. Doc. 64 at 113.

[16]   *Id.* at 135, 137.

[17]   *Id.* at 142.

[18]   R. Doc. 42-1.

[19]   R. Doc. 64 at 232.

[20]   *Id.* at 255-56.

evidence Brown's tape-recorded statement stating the same.[21]

At trial, the defendant presented the testimony of Cynthia Brown.  Brown testified that she was the one who packed the firearm in Daniels' duffel bag, and that she informed all three agents that she brought the gun.[22]  Brown testified that her statement to Newman and Scott that Daniels had put the firearm in the duffel bag was not true, and that Daniels did not know that the gun was in the car.[23]

The jury found Daniels guilty of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[24]  The Court sentenced Daniels to 100 months imprisonment.[25]  On January 23, 2009, petitioner filed a timely notice of appeal.[26]  The United States Court of Appeals for the Fifth Circuit affirmed Daniels' conviction.[27]  Daniels did not petition for a writ of *certiorari*.  Petitioner now moves the Court to vacate, set aside, or correct his sentence under section 2255, basing the petition on nine grounds of ineffective

---

[21]  R. Doc. 42-1.

[22]  R. Doc. 64 at 199, 205-06.

[23]  *Id.* at 205.

[24]  R. Doc. 42-2 at 3.

[25]  R. Doc. 53 at 2.

[26]  R. Doc. 52.

[27]  R. Doc. 79.

assistance of counsel: (1) counsel's failure to address discrepancies between a time-stamped photo and the signed consent to search form at the suppression hearing; (2) counsel's failure to address discrepancies in testimony at the suppression hearing; (3) counsel's failure to present certain sworn evidence at the suppression hearing; (4) counsel's failure to ensure photos were cropped at trial; (5) counsel's failure to call a rebuttal witness at trial; (6) counsel's failure to effectively argue for a mistrial; (7) the cumulative effect of counsel's ineffectiveness; (8) counsel's generally poor representation and unprofessional behavior at trial; and (9) appellate counsel's failure to argue that Daniels was not the owner of the firearm found during the traffic stop.

## II.   LEGAL STANDARD

### A. 28 U.S.C. § 2255

Section 2255 of Title 28 of the United States Code provides that a federal prisoner serving a court-imposed sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  Only a narrow set of claims are cognizable on a section 2255 motion.  The statute identifies four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to

impose the sentence; (3) the sentence exceeds the statutory
maximum sentence; or (4) the sentence is "otherwise subject to
collateral attack." *Id.*  A claim of error that is neither
constitutional nor jurisdictional is not cognizable in a section
2255 proceeding unless the error constitutes "a fundamental
defect which inherently results in a complete miscarriage of
justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979).
(quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

When a section 2255 motion is filed, the district court must
first conduct a preliminary review.  "If it plainly appears from
the motion, any attached exhibits, and the record of prior
proceedings that the moving party is not entitled to relief, the
judge must dismiss the motion." *Rules Governing Section 2255
Proceedings,* Rule 4(b).  If the motion raises a non-frivolous
claim to relief, the court must order the government to file a
response or to take other appropriate action. *Id.*  The judge may
then order the parties to expand the record as necessary and, if
good cause is shown, authorize limited discovery. *Rules
Governing Section 2255 Proceedings,* Rules 6-7.

After reviewing the government's answer, any transcripts and
records of prior proceedings, and any supplementary materials
submitted by the parties, the court must determine whether an
evidentiary hearing is warranted. *Rules Governing Section 2255
Proceedings*, Rule 8.  An evidentiary hearing must be held unless

"the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  No evidentiary hearing is required, however, if the prisoner fails to produce any "independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence.  *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).  For certain "structural" errors, relief follows automatically once the error is proved.  *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993).  For other "trial" errors, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case.  *Id.* at 637-38; *see also United Statesv. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a section 2255 proceeding).  If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

**B. Ineffective Assistance of Counsel**

To establish a claim of constitutionally ineffective assistance of counsel, petitioner must show both (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance, the likely outcome of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). Petitioner must meet both prongs of the *Strickland* test and, if the Court finds that petitioner has made an insufficient showing as to either prong, the Court may dispose of the claim without addressing the other prong. *See id.* at 697. The Fifth Circuit applies the same standard for ineffective assistance of counsel to trial and appellate counsel. *United States v. Merida*, 985 F.2d 198, 202 (5th Cir. 1993).

As to the first prong of the *Strickland* test, counsel's performance must be compared to "an objective standard of reasonableness, mindful of the strong presumption of adequacy." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). A court should not find inadequate representation merely because, with the benefit of hindsight, the court disagrees with counsel's strategic choices. *Id.* The Fifth Circuit has made clear that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it

permeates the entire trial with obvious unfairness." *Id.*

(quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (on

rehearing)).  As to the second *Strickland* prong, a petitioner

must show

> that there is a reasonable probability that, but for
> counsel's unprofessional errors, the result of the
> proceeding would have been different. A reasonable
> probability is a probability sufficient to undermine
> confidence in the outcome.

*Strickland*, 466 U.S. at 694.


**III. DISCUSSION**

**A.  Timeliness**

Section 2255(f) provides as follows:

> A 1-year period of limitation shall apply to a motion under
> this section.  The limitation period shall run from the
> latest of – –
>     (1) the date on which the judgment of conviction
>     becomes final;
>     (2) the date on which the impediment to making a motion
>     created by governmental action in violation of the
>     Constitution or laws of the United States is removed,
>     if the movant was prevented from making a motion by
>     such governmental action;
>     (3) the date on which the right asserted was initially
>     recognized by the Supreme Court, if that right has been
>     newly recognized by the Supreme Court and made
>     retroactively applicable to cases on collateral review;
>     or
>     (4) the date on which the facts supporting the claim or
>     claims presented could have been discovered through the
>     exercise of due diligence.

28 U.S.C. § 2255(f).  Daniels' conviction became final 90 days

after the Fifth Circuit dismissed his appeal on November 5, 2009,

when the time for seeking *certiorari* expired.  *See United States*

*v. Gamble*, 208 F.3d 536, 537 (5th Cir. 2000).  The Court received Daniels' motion for relief on September 15, 2010, within the one-year limitation period.  Daniels therefore timely filed his section 2255 motion.

## B.  Ineffective Assistance of Counsel

Petitioner's motion, alleging ineffective assistance of counsel, lists nine grounds for overturning his conviction. Three grounds are based on counsel's performance at petitioner's suppression hearing, and five grounds are addressed to counsel's performance at trial.  The final ground addresses appellate counsel's performance.

### (1) Ineffective Assistance of Counsel at Suppression Hearing

As a preliminary matter, the Court rejects the government's assertion that petitioner's ineffective assistance claims regarding counsel's performance at the suppression hearing are barred from collateral review by *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone*, the Supreme Court held that a state prisoner cannot raise a Fourth Amendment challenge in a collateral attack if the prisoner had a full and fair opportunity to litigate that issue in the state courts.  428 U.S. at 494-95 & n.37; *see also United States v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003) (extending the *Stone* rule to federal prisoners bringing section

2255 claims).  But in *Kimmelman v. Morrison*, the Supreme Court held as an exception to *Stone* that a claim of ineffective assistance of counsel can include a claim that trial counsel failed to litigate competently an issue under the Fourth Amendment.  477 U.S. 365, 382-83 (1986); *see also United States v. Thompson*, 44 F.3d 1004, 1995 WL 10514, at *4 (5th Cir. 1995) ("A Fourth Amendment claim is not precluded by *Stone v. Powell* when it is raised in the context of a Sixth Amendment ineffective assistance claim.") (citation omitted); *United States v. Torres*, No. 09-3172, 2010 WL 1443613, at *2-3 (S.D. Tex. April 9, 2010) (addressing the merits of petitioner's section 2255 motion alleging that his trial counsel was ineffective in failing to raise certain arguments in his motion to suppress).  Accordingly, the Court will address the merits of petitioner's ineffective assistance claims regarding counsel's performance at the suppression hearing.

To obtain post-conviction relief based on counsel's failure to litigate a Fourth Amendment claim competently, petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  *Kimmelman*, 477 U.S. at 375.

*(a) Failure to Address Discrepancies Between a Time-*
*Stamped Photograph and the Consent to Search Form*

Petitioner first argues that his counsel was ineffective in failing to raise discrepancies at the suppression hearing regarding the time stamped on photographs allegedly taken after the search and the time marked on the consent to search form. Daniels asserts that because the time on the consent to search form was later than the time on the photographs allegedly taken after the search, a search took place before consent was given. The Court finds that defense counsel's failure to address the time discrepancies was not objectively unreasonable.  First, if, as Daniels now suggests, Deputy Womack searched the vehicle before receiving Daniels' consent to search, Daniels was in a position to inform his attorney of these facts before the suppression hearing.  Nowhere in the record, however, does Daniels suggest that he ever told his attorney that Womack searched his vehicle before receiving his consent.

Second, the record shows that defense counsel was not provided with the photographs in issue until after the August 7, 2008 suppression hearing.[28]  Defense counsel's failure to raise discrepancies in evidence not in its possession cannot be found

---

[28]  R. Doc. 64 at 87; *id.* at 176 ("Q: Deputy, when did you disclose to the government that you had these photographs. A: Day before yesterday maybe.  The last time I was down here.  Q: You never mentioned those pictures prior to that to the government or to myself or my co-counsel at prior hearings.  A: No.").

13

objectively unreasonable.  Further, petitioner does not assert
that defense counsel was deficient in failing to discover this
evidence earlier.  Thus, counsel's failure to raise discrepancies
between the time marked on the photographs and the consent to
search form at the suppression hearing was not unreasonable.[29]


### (b) Failure to Address Discrepancies in Testimony

Daniels next argues that he was denied effective assistance
of counsel because his attorney failed to address discrepancies
in the testimony of Deputy Womack and Daniels.  Daniels' argument
fails because Daniels did not testify at the suppression hearing
or at trial.  Because Daniels did not provide any testimony in
this case, there were no discrepancies in testimony for Daniels'
attorney to point out to the Court.

Daniels also argues that he was denied effective assistance
of counsel when his attorney failed to inform the Court at the

---

[29]  In addition, the Court notes that at trial, Deputy
Womack explained the discrepancy between the time marked on the
photographs and the consent to search form.  Deputy Womack
testified that he did not input the time into the camera, and
that he could not say whether the time on the camera reflected
the exact time.  R. Doc. 64 at 145.  Agent Womack's testimony
that the stop occurred at 6:46 a.m. is supported by
contemporaneous, documentary evidence.  See R. Doc. 20-2 (TPSO
Incident Report); R. Doc. 20-4 (Louisiana Uniform Traffic Ticket
and Complaint).  For the time on the photographs to be correct,
the photographs would have been taken just three minutes after
the stop occurred.  The Court finds it more probable that the
time on the camera did not reflect the exact time, than that the
photographs were taken three minutes after the stop.

suppression hearing that a ticket, envelope and Daniels' driver's license were not found with his property at the jail.  Daniels appears to argue that because his attorneys searched for and did not find a ticket, envelope, and driver's license at the jail, the results of the search should have been used to impeach Deputy Womack's testimony.  Daniels provides no evidence, however, to support his assertion that his attorneys searched his property at the jail and did not find a ticket, envelope or his driver's license.  *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (denying ineffective assistance of counsel claim based on failure to investigate because, among other reasons, petitioner did not point to any evidence in the record to support his argument that the victim may have had powder burns on his hands to corroborate his testimony that he struggled with the victim for control of the gun); *Scott v. Hanks*, 79 F.3d 1150 (7th Cir. 1996) (denying ineffective assistance of counsel claim where petitioner did not offer any support for his allegation that his attorney did not advise him of the availability of an intoxication defense).

But, even if the Court were to assume that Daniels' attorneys did conduct a search, Daniels still must show that his attorneys' argument would have successfully undermined Deputy Womack's testimony, and affected the outcome of the suppression hearing.  *See United States v. Cruz*, 59 F.3d 1241, 1995 WL

413055, at *1 (5th Cir. 1995) (denying ineffective assistance claim based on failure to impeach because "the impeachment evidence would not have undermined the government's case sufficiently to affect the outcome of the trial"); *Rodriguez v. Portuondo*, No. 01-547, 2006 WL 2168314, at *10 (S.D.N.Y. Aug. 1, 2006) ("Whether counsel's failure to impeach violates the Sixth Amendment depends upon the extent to which impeachment evidence would have affected the outcome of the case," and "not every failure to impeach a prosecution witness will support an ineffective assistance claim").  At the hearing, Womack testified that after writing the citation, he had Daniels sign the ticket, and gave Daniels a hard copy of the ticket, an envelope to mail the fine, and his driver's license.[30]  The Court finds that an argument that defense counsel did not find Daniels' license at the jail would not have been sufficient to undermine Womack's testimony and alter the outcome of the suppression hearing. Womack provided credible, consistent testimony regarding the events surrounding Daniels' arrest.  Further, Womack's testimony is corroborated by documentary evidence, including a detailed police report and a copy of the ticket issued for the traffic violation.[31]

---

[30]  R. Doc. 35 at 16.

[31]  R. Doc. 20-2 (TPSO Incident Report); R. Doc. 20-4 (Louisiana Uniform Traffic Ticket and Complaint).

16

In addition, that the traffic ticket and license were not
found at the jail *after* the search and *after* Daniels' arrest does
not establish that Daniels was not given the ticket and his
driver's license at the scene.  Womack testified that after
receiving Daniels' consent to search the vehicle, he had Daniels
and the two women stand together approximately fifteen yards from
the vehicle while the vehicle was searched.[32]  During this time,
and before his arrest, Daniels could have given his drivers'
license and ticket to one of the other passengers as they stood
together at the side of the highway.[33]  Thus, Daniels' argument
that his lawyers did not find the documents at the jail does not
establish that Daniels was not given the documents and returned
his license before consenting to the search.

Finally, in ruling on Daniels' motion to suppress, the Court
held that Daniels failed to establish that he had a legitimate
expectation of privacy with respect to the search of the vehicle
because there was no evidence Robert Bell was Daniels'
stepfather, that Bell gave Daniels permission to use the car, or

---

[32]   R. Doc. 35 at 24.

[33]   The Court notes that Cynthia Brown provided testimony at
trial that she did not witness Daniels sign the consent to search
form, or sign the ticket.  R. Doc. 64 at 198-99.  Brown did not
testify, however, that Daniels was not issued a ticket, only that
she did not witness Daniels sign the ticket.  Further, Brown did
not testify that Daniels was not returned his license at the
scene.  In addition, Brandy Burkey, the third individual in the
car, did not testify at trial.

that the rental agreement authorized others to drive the car.[34]
Thus, even if evidence regarding the results of defense counsel's
investigation had been presented and successfully impeached
Womack, the Court still would have denied Daniels' motion to
suppress based on its alternate ruling.

### (c) Failure to Present Sworn Documents

Petitioner asserts that he was denied effective assistance
of counsel by defense counsel's failure to present sworn
documents evidencing that Daniels' stepfather rented the searched
car and that Daniels had permission to use the vehicle.  Daniels
appears to be arguing that his attorneys' investigation was
inadequate by failing to obtain this evidence and present it to
the Court.  However, a petitioner must have factual support for
such a claim and point to evidence in the record demonstrating
that further investigation would in fact have revealed additional
information beneficial to the defense.  *See Moawad*, 143 F.3d at
948 (denying petitioner's ineffective assistance of counsel claim
because petitioner failed to point to any evidence in the record
to support his argument that the victim may have had powder burns
on his hands to corroborate petitioner's testimony that he and
the victim struggled for control of the gun); *Brown v. Dretke*,
419 F.3d 365, 375 (5th Cir. 2005) (denying allegation of

---

[34]   R. Doc. 33 at 7.

deficient investigation because petitioner presented no evidence
showing that interviewing any other witnesses could have provided
trial counsel with helpful information); *Kron v. Tanner*, No. 09-
7572, 2010 WL 3488227, at *11 n.26 (E.D. La. May 4, 2010)
(holding petitioner failed to establish ineffective assistance of
counsel claim based on counsel's failure to obtain a video
surveillance tape because "[h]e has not established that such a
videotape existed, much less that it would have exonerated him").

Daniels does not provide any factual support or pointed to
any evidence in the record demonstrating that upon further
investigation, defense counsel could have obtained evidence that
Daniels had permission under the rental agreement to drive the
car.  In *United States v. Seeley*, the Fifth Circuit held that the
driver of a rental car, who was neither the renter or authorized
driver of the vehicle, lacked standing to challenge the search of
the car where the rental agreement provided "no additional
renters are authorized to drive the vehicle."  331 F.3d 471, 472
& n.1 (5th Cir. 2003).  Here, the only rental agreement in the
record is issued to Rena Parker, and specifically states that "no
additional operators are authorized or permitted without Budget's
prior written approval."[35]  Further, at the motion to suppress
hearing, defense counsel stated that Bell's rental agreement was

---

[35]  R. Doc. 22-1 at 1.

19

"very similar" to Rena Parker's rental agreement.[36]  Daniels does not suggest that he had authority under the rental agreement to drive the car or that his rental agreement differed in any way from the rental agreement found in Rena Parker's name.  Because Daniels has provided no factual support or evidence to demonstrate that a rental agreement authorizing him to drive the car even exists, his ineffective assistance claim fails.

Even if the Court were to assume that counsel's performance fell below an objective standard of reasonableness, petitioner's claim still fails because he is unable to prove that he was prejudiced by counsel's actions.  In ruling on Daniels' motion to suppress, the Court held, in an alternative ruling, that even if Daniels had standing to challenge the search, he would not prevail on the merits of his motion.[37]  The Court found that Daniels was not illegally detained after the traffic stop, and the government had met its burden of showing that Daniels' consent was voluntary.[38]  Because the Court denied Daniels' motion not only on the issue of standing, but also on the merits, petitioner is unable to prove that this evidence would have changed the result of the suppression hearing.

---

[36]  R. Doc. 35 at 5.

[37]  R. Doc. 33 at 7.

[38]  *Id.* at 12-14.

### (2)  Ineffective Assistance of Counsel at Trial

#### (a) Failure to Ensure Photographs were Cropped

Daniels contends that he received ineffective assistance of counsel at trial by his attorneys' failure to ensure that certain photographs depicting the firearm were cropped to remove marijuana from the photos in accordance with the Court's order.[39] Daniels' argument is without merit.  The record reflects that defense counsel reviewed all photographs to ensure they were properly cropped before they were admitted into evidence and published to the jury.[40]  Further, the government has supplemented the record with the photographs in issue, and after review of the photographs, the Court finds that the photographs were properly cropped to remove any depiction of marijuana. There is no evidence in the record that any admitted photographs were not properly cropped as required by the Court's order. Accordingly, petitioner's argument fails to show that counsel's performance was deficient.

#### (b)  Failure to Call Rebuttal Witnesses Regarding Fingerprint Testimony

Petitioner next asserts that he was denied effective assistance of counsel by his attorneys' failure to call witnesses

---

[39]  R. Doc. 64 at 87-93.

[40]  *Id.* at 121.

to rebut Agent Doreck's testimony concerning the difficulty or impossibility of retrieving fingerprints from a firearm. Petitioner's argument fails to meet either the deficient performance prong or the prejudice prong of *Strickland*. Generally, "[c]omplaints of uncalled witnesses are not favored in federal habeas review." *Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir. 1984) (citation omitted).  There is a strong presumption that counsels' decision not to call a witness was a strategic one.  *Id.*  "To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008) (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). Here, Daniels has not identified any witness who would have testified differently than Agent Doreck, or set out the content of such a witness's proposed testimony.

In addition, defendant asserts that "Defense Attorney Stone well knew that exonerating lack of fingerprints was available to her, and should have pursued the point."[41]  The record reflects, however, that both defense attorneys emphasized the lack of fingerprint evidence in this case.  First, counsel cross-examined

---

[41]  R. Doc. 91 at 11.

Agent Doreck, emphasizing that the firearm was not submitted for

fingerprint testing:

> Q. Just to clarify, the firearm was never submitted for
> fingerprint testing; correct?
> A. That's correct.
> Q. Nor was the clip?
> A. Yes. None of the evidence was.
> Q. Nor the bullet, nor the box?
> A. Right.
> Q. You said that there's no policy with ATF that says you
> have to submit it for printing.  On the flip side, there's
> no policy that prevents you from doing that, is there?
> A. No. [42]

Defense counsel also cross-examined Womack, again

emphasizing the lack of fingerprint evidence:

> Q: I want to get back to the gun you found in the trunk. You
> never saw anyone handle the weapon - -
> A: No.
> ...
> Q: You never submitted it to the labs for prints; correct?
> A: No.[43]

In addition, defense counsel stressed the lack of

fingerprint evidence in its closing argument, stating:

> We have, you heard, DEA, we have ATF, and we have the
> Tangipahoa Sheriff's Office.  None of these agencies
> submitted that gun for testing.  None of them submitted it
> for prints.  This gun could have been printed.  The clip
> could have been printed.  The box could have been printed.
> None of that because it's easier to come here and say, "We
> just didn't do it."[44]

The record reflects that both defense attorneys clearly

---

[42]   R. Doc. 64 at 119.

[43]   *Id.* at 178.

[44]   *Id.* at 285-86.

challenged the lack of fingerprint evidence in this case.  The
Court holds that defense counsel's failure to call a rebuttal
witness concerning the difficulty of retrieving fingerprints from
a firearm was not objectively unreasonable.  In addition, defense
counsel's failure to call the rebuttal witness did not prejudice
the petitioner because the jury heard, on numerous occasions,
that there was no fingerprint evidence linking the defendant to
the firearm.  Accordingly, Daniels' ineffective assistance of
counsel claim on this ground fails.

   *(c)  Failure to Effectively Argue Motion for Mistrial*

     Petitioner argues that he was denied effective assistance of
counsel at trial because his attorneys failed to effectively
argue his motion for a mistrial when Deputy Womack testified that
Daniels "had four prior-."  Petitioner further argues that
defense counsel was ineffective in settling for a jury
instruction instead of filing an interlocutory appeal.
Petitioner's arguments fail to establish ineffective assistance
of counsel.  First, defense counsel strongly argued for a
mistrial after Womack's testimony regarding Daniels' "four
priors."[45]  Further, defense counsel renewed its motion for a
mistrial before closing arguments.[46]  Although the Court denied

---

[45]   *Id.* at 156-58.

[46]   *Id.* at 277.

24

the motion on both occasions on the grounds that the prejudicial effect of the testimony could be cured by a jury instruction, the Court does not find that defense counsel's performance in arguing the mistrial motion fell below an objective standard of reasonableness.

In addition, Daniels cannot meet the second *Strickland* prong based on his attorneys' "settling" for a jury instruction instead of filing an interlocutory appeal.  Under Fifth Circuit law,

> [t]he refusal to grant a mistrial based on the admission of prejudicial evidence is reviewed for an abuse of discretion. If the motion for mistrial involves the presentation of prejudicial testimony before a jury, a new trial is required only if there is a significant possibility that the prejudicial evidence had a substantial impact upon the jury verdict, viewed in light of the entire record.  In addition, a prejudicial remark may be rendered harmless by curative instructions to the jury.
> ...
> [J]uries are presumed to follow their instructions.

*United States v. Millsaps*, 157 F.3d 989, 993 (5th Cir. 1998).  In this case, after Womack testified to Daniels' "four priors," the Court instructed the jury:

> Ladies and gentlemen, as I previously instructed you, the defendant has stipulated that he has a prior felony conviction and that you are to consider that fact only for the purposes of the second element of Count 1 of the indictment and for no other purpose.  So any discussion of criminal history is irrelevant.  The only purpose of the stipulation is for your consideration with respect to the second element.[47]

Because "juries are presumed to follow their instructions," *id.*,

---

[47] *Id.* at 158.

and Daniels does not explain how the Court's curative instruction was inadequate, the Court finds that any prejudicial effect of Womack's reference to Daniels' "four priors" was cured by the instruction to the jury.  Accordingly, Daniels has failed to show that he was prejudiced by his attorneys "settling" for a jury instruction, rather than filing an interlocutory appeal.

### (d) Cumulative Effect

Petitioner next asserts that he was denied effective assistance of counsel based on the "cumulative effect of the many instances of ineffectiveness exhibited by defense counsel."  But, under Fifth Circuit law, "ineffective assistance cannot be created from the accumulation of acceptable decisions and actions."  *United States v. Hall*, 455 F.3d 508, (5th Cir. 2006); *see also Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000) (stating that in the absence of specifically demonstrated error, a defendant cannot show that cumulative error of counsel deprived him of a fair trial); *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993) (stating that where certain alleged errors did not rise to constitutionally ineffective assistance of counsel, a petitioner had "presented nothing to cumulate").  "Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised."  *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996).  Here, because petitioner has

26

asserted only meritless ineffective assistance of counsel claims,
his attempt to cumulate the alleged instances of ineffectiveness
is also without merit.

### (e) Poor Representation and Unprofessional Behavior

Petitioner asserts that he was "poorly represent[ed]" and
that his attorneys "acted unprofessionally."  Although Daniels
provides a specific example of the asserted "poor
representation," his claim fails because he cannot show a
reasonable probability that, but for counsel's errors, the result
of the proceeding would have been different.  The record reflects
that the portion of the transcript cited by petitioner took place
entirely outside the presence of the jury.[48]  Thus, petitioner is
unable to prove that he was prejudiced by his attorneys'
performance as reflected in the cited portion of the transcript.

To the extent that Daniels asserts that the cited example is
only one instance of the "generally poor representation" harming
his defense, this broad, conclusory statement is unsupported by
evidence.  Naked statements of ineffective assistance are
insufficient to meet the *Strickland* standard.  *See, e.g.,*
*Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992)
(petitioner's ineffective assistance claim was too indefinite to
show prejudice where defendant faced multiple charges and there

---

[48]    *Id.* at 184-91.

27

were multiple possible explanations for the jury's verdict); *see
also Green v. McGougan*, 744 F.2d 11889, 1190 (5th Cir. 1984)
("One claiming ineffective assistance of counsel must identify
specific acts or omissions; general statements and conclusionary
charges will not suffice.  The particular professional failure
must be pled and proven.").

### *(3)  Ineffective Assistance of Appellate Counsel*

Daniels contends that his appellate counsel was ineffective
for "fail[ing] to present what amounts to the penultimate
argument — that Mr. Daniels was NOT the owner of the firearm
found during the traffic stop which initiated the proceedings."[49]
Appellate counsel is under no obligation to raise every
nonfrivolous ground of appeal.  *United States v. Williamson*, 183
F.3d 458, 462 (5th Cir. 1999).  It is within the appellate
counsel's sound discretion to abandon any losing issues on
appeal.  *Id.*  But a reasonable attorney must research the
relevant facts and law and bring meritorious arguments to the
court's attention, or make an informed decision that certain
arguments will not prove fruitful.  *Id.* at 462-63.  Here,
petitioner was charged with being a felon in possession of a
firearm.  As an element of the charged offense, the government

---

[49]   R. Doc. 91 at 15.

was required to prove beyond a reasonable doubt that Daniels
knowingly possessed a firearm; specifically that Daniels had
either actual or constructive possession of the firearm. *United
States v. McGrew*, 165 F. App'x 308, 310-11 (5th Cir. 2006). A
defendant need not own a firearm in order to possess it. *Id.* at
311 (citing *United States v. Jones*, 133 F.3d 358, 362 (5th Cir.
1998)). Accordingly, the Court finds that an argument based on
petitioner's lack of ownership of the firearm would not have been
meritorious, and petitioner has failed to establish that
appellate counsel's performance was unreasonable for not raising
the argument.


IV.   **CERTIFICATE OF APPEALABILITY**

     The Rules Governing Section 2255 Proceedings provide that
"[t]he district court must issue or deny a certificate of
appealability when it enters a final order adverse to the
applicant. Before entering the final order, the court may direct
the parties to submit arguments on whether a certificate should
issues." *Rules Governing Section 2255 Proceedings*, Rule 11(a).
A court may only issue a certificate of appealability if the
petitioner makes "a substantial showing of the denial of a
constitutional right." 28 U.S.C. § 2253(c)(2). In *Miller-El v.
Cokrell*, the Supreme Court held that the "controlling standard:

29

for a certificate of appealability requires the petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petitioner should have been resolved in a different manner or that the issues presented [are] 'adequate to deserve encouragement to proceed further.'"  537 U.S. 332, 336 (2003).

Daniels' motion does not satisfy these standards.  Daniels has identified no plausible grounds for his claims of ineffective assistance of counsel.  Reasonable jurists would not find his arguments to be fertile grounds for debate.


**V.    CONCLUSION**

For the foregoing reasons, the Court DENIES petitioner's Section 2255 motion to vacate, set aside, or correct the sentence.  The Court will not issue a certificate of appealability.


New Orleans, Louisiana, this 18th day of March, 2011.


_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE